IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

KENDRIC SIMMONS,

    Defendant.

CASE NO. 1:19-cr-00250-ELR-LTW

## FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on Defendant Kendric Simmons's ("Defendant") Motion to Suppress. (Doc. 15); see also (Doc. 29). The Government has filed a Response in Opposition to Defendant's motion (Doc. 32), and Defendant filed a Reply. (Doc. 34). For the reasons outlined below, the Court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. (Doc. 15).

## BACKGROUND

On July 9, 2019, a grand jury in the Northern District of Georgia returned a one count Indictment ("Indictment") charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). After Defendant filed his

Motion to Suppress, the Court held an evidentiary hearing on January 24, 2020, during which the following facts were established.

On March 29, 2019, Cobb County Police Officer Michael Finks was patrolling a high-crime area near Riverside Parkway (formerly known as Six Flags Drive) in Marietta, Georgia. (Doc. 28, at 3–4). Officer Finks works in the violent crime unit and was patrolling the Riverside Parkway area because of an "increase in . . . shootings that were in the area." (Id. at 3–4, 6). According to Officer Finks, he saw a vehicle conduct "a short stay," which "is usually . . . drug behavior." (Id. at 6–7). Officer Finks further observed that the vehicle's brake lights were out, which is a violation of Georgia law. (Id. at 7). At that point, Officer Finks and his partner decided to initiate a traffic stop. (Id. at 21). Because they were in an unmarked car without lights or sirens, the officers notified Cobb County Police Lieutenant Middendorf,[1] "who was in a marked Cobb County Police car with blue lights and a siren, to come and make the traffic stop." (Id. at 8).

Lieutenant Middendorf got behind the vehicle and activated his blue lights, and the vehicle pulled over into a church parking lot. (Id. at 9). Officer Finks and his

---

[1] Lieutenant Middendorf's first name was not provided. See (Doc. 28).

partner were behind Lieutenant Middendorf and pulled into the lot on the side.  (Id. at 10).  The back passenger side door of the vehicle opened, and Defendant fled carrying a blue book bag.  (Id.).  Officer Finks told Defendant that he was with the police[2] and "continually" commanded Defendant to stop running.  (Id. at 12).  Defendant did not stop.  Instead, Defendant ran into a cemetery next to the church, "threw the book bag," and kept running.  (Id. at 10, 12, 27).  Defendant ran behind the church, then across a road, went into another parking lot, lept down a flight of stairs, continued running, and was finally apprehended approximately 100 to 125 yards from where he threw the book bag.  (Id. at 10, 12–13, 27).  During his arrest, Defendant struggled and "was attempting to reach into his waistband, where weapons are commonly stowed."  (Id. at 13).

Once Defendant was in handcuffs, Officer Finks's partner searched Defendant as part of the arrest and found marijuana in his pants.  (Id.).  While Defendant and the officers were walking back to the location of the traffic stop, Officer Finks recovered the book bag Defendant threw.  (Id.).  Inside, Officer Finks found a loaded, semi-

---

[2]  Although Officer Finks was in an unmarked vehicle and in plain clothes, he was wearing a "vest that has Cobb County Police issued badge on the front and the words Police on the back and the front."  (Doc. 28, at 11).

automatic pistol.[3]  (Id.).  Because Defendant "wasn't being very cooperative," he was placed in the back of a patrol car.  (Id. at 15).  Upon returning to the location of the traffic stop, Officer Finks smelled an "overwhelming odor of marijuana coming from inside the vehicle."  (Id. at 14–15).  The three remaining passengers, who had not fled, were asked to exit the vehicle.  (Id.).

Omar Little was the back driver's side passenger, and Officer Finks found "a bag of marijuana in the back of [a] little pocket" where Little was sitting.  (Id. at 15–16).  After Little was placed in the back of the patrol car with Defendant, Officer Finks "asked [Little] if that was his marijuana."  (Id. at 16); see also (id. at 17) (stating that he directed the question to Little).  Little said "no," and then Defendant "spoke over" Little and claimed responsibility for the marijuana.  (Id. at 16).  At that point, Officer Finks read Defendant a Miranda warning, which had not been done yet, and Defendant then refused to answer any more questions.  (Id.).

---

[3]  Officer Finks referred to the gun as "an Intricate Arms Mac 10 handgun."  (Doc. 28, at 13).  The "MAC 10" is a firearm produced by the Military Armament Corporation ("MAC").  Intratec produced a similar pistol known as a "TEC-9," which is the firearm Defendant is charged with possessing.  (Doc. 1).  The TEC-9 was explicitly outlawed under the now-expired Federal Assault Weapons Ban.

## **DEFENDANT'S MOTION TO SUPPRESS**

In his Motion, Defendant seeks to suppress the evidence seized after the traffic stop and his pre-Miranda[4] statement to Officer Finks.  (Doc. 29, at 1).  Defendant first argues that Cobb Police did not have reasonable suspicion to justify the stop.  (Id. at 6–9).  Next, Defendant contends that the officers lack reasonable suspicion to seize him personally and that the subsequent search of his person was unreasonable.  (Id. at 9–13).  Third, Defendant asserts that the search of the book bag was unconstitutional.  (Id. at 13–17).  Last, Defendant argues his inculpatory statement to Officer Finks must be suppressed under Miranda.  (Id. at 17–19).  The Court addresses each of these issues in turn.

### **A.    Whether the Traffic Stop was Justified**

Law enforcement can stop a vehicle when there is "probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."  United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)) (quotation marks omitted).  "Probable cause exists where the facts and

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." United States v. Blasco, 702 F.2d 1315, 1324 (11th Cir.1983). A court's assessment of probable cause focuses on "whether the circumstances, viewed objectively, justified the stop." United States v. Harrelson, 465 F. App'x 866, 868 (11th Cir. 2012).

Defendant asserts the officers were "on routine patrol" and that "there is absolutely no evidence in the record to support the notion the officers were patrolling the area" because of recent shootings. (Doc. 29, at 7); (Doc. 34, at 2). But contrary to Defendant's contention, Officer Finks explicitly testified that he was patrolling the specific area where Defendant was found because of an "increase in a couple of shootings that were in the area." (Doc. 28, at 6). Likewise, Defendant argues Officer Finks testified that the "vehicle neither stopped nor stayed," and that "he did not observe any unlawful activity at that time." (Doc. 29, at 8). Although Officer Finks did not personally see the vehicle stop, he consistently testified that it "conducted a short stay," which "is usually . . . drug behavior." (Doc. 28, at 19); see also (id. at 6–

7).  Nowhere does Officer Finks "concede[ ] that he did not observe any unlawful activity," as Defendant suggests.  <u>See</u> (Doc. 29, at 8); <u>see also</u> (Doc. 28).

Notably, the vehicle was not pulled over for being in a high crime area or the alleged "short stay."  Officer Finks testified that he saw the vehicle's brake lights were broken and decided to initiate the traffic stop at that time.  (Doc. 28, at 7, 21).  While Defendant calls the traffic violation "dubious", but there is no evidence to support his assertion.  <u>See</u> (Doc. 29, at 8–9).  Georgia law requires that brake lights "be maintained in good working condition" at all times.  O.C.G.A. § 40-8-26(b).  As the Government points out, the fact that the vehicle's brake lights were not working is supported by both Officer Finks's testimony and direct video evidence presented to the Court.  (Doc. 32, at 9).  In reply, Defendant does not address this fact and focuses on whether he made an illegal turn or was swerving.  (Doc. 34, at 2).  But the alleged illegal turn happened *after* Officer Finks had already decided to pull over the vehicle for the brake-light violation.  <u>See</u> (Doc. 28, at 21).  Because the objective evidence proves that the driver was breaking Georgia law, the traffic stop was constitutionally justified.  <u>See</u> <u>Strickland</u>, 902 F.2d at 940.

7

**B.**     <u>Whether the Seizure of Defendant was Justified</u>

Similar to a traffic stop, an officer needs probable cause to conduct a warrantless arrest. <u>United States v. Lyons</u>, 403 F.3d 1248, 1253 (11th Cir.2005). Here, the Government argues the officers had probable cause to arrest Defendant based on his knowing and willful obstruction of law enforcement in violation of O.C.G.A. § 16-10-24(a). (Doc. 32, at 10–11). In reply, Defendant contends that "there is no evidence in the record whatsoever that Officer Finks . . . contemplated an obstruction charge." (Doc. 34, at 3). Defendant's argument, however, is contradicted by the evidence. During the evidentiary hearing, the only evidence introduced by Defendant was the Cobb County Police Report regarding the incident. (Doc. 28, at 20). The police report explicitly states that Officer Finks secured an arrest warrant for Defendant for, *inter alia*, "OBSTRUCTION (M)," the exact crime the Government argues gave Officer Finks probable cause to arrest Defendant. (Defendant's Ex. 1, at 5). Whether Cobb County ever followed through with the prosecution is besides the immaterial. Officer Finks appears to have contemplated an obstruction charge against Defendant.

Furthermore, the officers' "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." <u>Whren v. United States</u>, 517 U.S. 806

813 (1996). Defendant further suggests that maybe Officer Finks's "conduct did not satisfy Cobb County's standards for" obstruction. (Doc. 34, at 3–4). The Supreme Court, however, has explicitly rejected the use of particular "police enforcement practices" because those "vary from place to place and from time to time," and "the search and seizure protections of the Fourth Amendment" do not "turn upon such trivialities." Whren, 517 U.S. at 815.

The constitutionality of Defendant's arrest does not depend "on whether the arresting officer state[d] the reason for the detention and, if so, whether he correctly identify[d] a general class of offense for which probable cause exist[ed]." Devenpeck v. Alford, 543 U.S. 146, 154 (2004). Probable cause exists whenever an officer knows of facts "sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." Blasco, 702 F.2d at 1324. This is so regardless of "the offense actually invoked at the time of arrest." Devenpeck, 543 U.S. at 154; see also United States v. Johnson, 752 F. App'x 771, 773–75 (11th Cir. 2018), cert. denied, 139 S. Ct. 949, 203 L. Ed. 2d 137 (2019) (holding an officer's search of the defendant's backpack, which revealed a pistol and led to the defendant's conviction for being a felon in possession of a firearm, was justified because the officer "had probable cause

to arrest defendant for disorderly conduct").

Looking objectively at the facts known to the officers at the time of Defendant's arrest, they had sufficient reason to believe that Defendant had committed a crime. Defendant argues the Government "has no jurisdiction over or established expertise in state law," but it is clear that the officers knew Defendant violated O.C.G.A. § 16-10-24(a). Pursuant to Georgia precedent, "[f]light after a lawful command to halt constitutes obstruction of an officer." Lebis v. State, 302 Ga. 750, 760 (2017) (quoting Cofield v. State, 304 Ga. App. 165, 168 (2010)); see also Clowers v. State, 324 Ga. App. 264, 267 (2013); Dukes v. State, 275 Ga. App. 442, 443 (2005); Patterson v. State, 244 Ga. App. 222, 223 (2000); Sprinkles v. State, 227 Ga.App. 112, 113 (1997); Tankersley v. State, 155 Ga. App. 917, 920 (1980).

Pretermitting whether Defendant's initial flight was unlawful, what Defendant did next was unlawful. Officer Finks "continually gave [Defendant] verbal commands . . . to stop running." (Doc. 28, at 12–13). Officer Finks explained that he was with the police and was wearing a "vest that has Cobb County Police issued badge on the front and the words Police on the back and the front." (Id. at 11–13). Despite this, Defendant continued running and was only apprehended after he fell down. (Id. at 12–

13).  Such facts are sufficient to support probable cause for Defendant's arrest.  <u>See</u>

<u>Clowers</u>, 324 Ga. App. at 267 (affirming a conviction for misdemeanor obstruction

where the officer was wearing a "vest with the word 'SHERIFF' emblazoned on the

front and back and a sheriff's badge on the front" yelled "sheriff's office, stop running"

and the defendant "continued to run").  Having found that Defendant's arrest was

supported by probable cause, the Court further concludes that the search of Defendant's

person incident to the arrest was lawful.  <u>See</u> <u>United States v. Robinson</u>, 414 U.S. 218

(1973) ("It is well settled that search incident to a lawful arrest is a traditional exception

to the warrant requirement of the Fourth Amendment.").

> **C.**    <u>**Whether the Search of the Book Bag was Constitutional**</u>

Before addressing whether the search of the book bag was constitutional, the

Court must first address the Government's argument that Defendant does not have

"standing to challenge the search of the backpack and the seizure of the firearm found

in it."  <u>See</u> (Doc. 32, at 15).  In his initial brief, Defendant contends that "simply

dropping or flipping [the bag] does not evince an intent to abandon."  (Doc. 29, at

17).  But Defendant did far more than "simply drop[ ]" a bag.  He tossed it away, in a

public location, while fleeing from the police.  (Doc. at 10, 12, 27).  In such a situation,

Defendant has "effectively abandoned the contraband and thus he has no Fourth Amendment standing to challenge the seizure." United States v. Tinoco, 304 F.3d 1088, 1117 (11th Cir. 2002) (holding the defendants had no standing to challenge the seizure of cocaine thrown overboard while they fled from the police); see also United States v. Dolomon, 569 F. App'x 889, 893 (11th Cir. 2014) (holding that because the defendant "discarded the firearm before he was actually seized, thereby abandoning it, the firearm was not suppressible as the fruit of an unconstitutional seizure").

In his briefs, Defendant relies on two cases where defendants had standing to challenge the searches at issue, both of which are readily distinguishable from the instant case. See (Doc. 29, at 15–17); (Doc. 34, at 6–10). In United States v. Albury, the defendant's hotel room "was closed and latched" when police first saw it. 782 F.3d 1285, 1288 (11th Cir. 2015). Later, "the dead bolt had been thrown" so that the door was no longer latched, but the door still "obstruct[ed] any view into the room." Id. The officer then entered the room without permission and found cocaine. Id. The magistrate judge held the government lacked "sufficient proof to establish an abandonment," because there was no evidence the defendant actually fled the room as the government claimed. United States v. Albury, 2012 WL 1339481, at *7 (M.D. Fla.

Jan. 19, 2012), report and recommendation rejected on other grounds, 2012 WL 1326921 (M.D. Fla. Apr. 17, 2012).  The Eleventh Circuit itself did not address the abandonment issue because the search was ultimately justified "under the independent source rule."  Albury, 782 F.3d at 1291 n.2.

Likewise, in United States v. Ross, the Eleventh Circuit initially held that the defendant had standing to challenge the search of his hotel room.  941 F.3d 1058, 1068 (11th Cir. 2019).[5]  The government argued that the defendant abandoned the room because he "fled the motel," while the defendant contended he simply did not intend to return to the room "*while police officers [we]re present*."  Id. at 1066–67 (emphasis and alteration in original).  In holding that the defendant did not abandon the room, the Ross Court relied on the fact that the defendant "locked his room and kept his key with him" and had been gone a mere 10 minutes before the officers' warrantless entry, supporting the defendant's contention he intended to bar the officers' entry into the room and return after they had left.  Id. at 1068.

---

[5]  Shortly after Defendant filed his initial, post-hearing brief, the Ross opinion was vacated for a rehearing *en banc*. 953 F.3d 744 (11th Cir. 2020).  While no longer binding, the Court agrees the original Ross opinion is illustrative.

But the <u>Ross</u> Court also explicitly stated, "we have held that an individual *can* abandon a reasonable expectation of privacy solely as a result of police pursuit or presence." <u>Id</u>. at 1067 (emphasis in original).  In support of this proposition, the <u>Ross</u> Court discussed <u>United States v. Edwards</u>, 441 F.2d 749 (5th Cir. 1971).  <u>Ross</u>, 941 F.3d at 1067.  In <u>Edwards</u>, the defendant left his car on a public road, with the keys still in the ignition, and fled on foot.  441 F.2d at 751.  Defendant tries to distinguish cases like <u>Edwards</u> because they "involve property interests in automobiles, which receive reduced protection under the Fourth Amendment." (Doc. 34, at 9).  But the cases discussed above are equally distinguishable because they involve hotel rooms, which are "entitled to a home-like level of constitutional protection." <u>Ross</u>, 941 F.3d at 1067.

The issue is not whether a backpack receives "reduced protection under the Fourth Amendment," as Defendant suggests. <u>See</u> (Doc. 34, at 9).  The issue is whether the evidence presented by the Government is sufficient to prove Defendant abandoned the backpack.  A hotel room is quite obviously not something a person can pick up and take with them when they leave the room.  As such, the government cannot show a person "abandoned" a hotel room simply because the person was not in the room when

it was searched.  See Albury, 2012 WL 1339481, at *7.  If that were so, a person could never leave their hotel room for fear that the government would claim it was "abandoned" because the person "fled."  A car, by contrast, is readily transportable because it is made for the very purpose of transportation.  If a person leaves their car unsecured and running in the middle of a public road, binding precedent holds that the person has implicitly "accepted the risk that [an] officer would search the car." Edwards, 441 F.2d at 753.

In this sense, a book bag is much more like a car than a hotel room—the bag is readily transportable and can be abandoned in a public location.  If Defendant intended to retain possession of the book bag, he would have simply done so.  He could easily have taken it with him.  Instead, Defendant threw it on the ground and ran hundreds of feet away from the bag, crossing a road, going through a parking lot, and jumping down a flight of stairs before finally being apprehended.  (Doc. 28, at 12–13, 27).  Moreover, Defendant's intent was clearly to keep running, far, far away from the book bag because the only reason he stopped running was his apprehension.  (Id. at 12–13).  The fact that Defendant was involuntarily prevented from running farther away from the bag hardly

demonstrates that he had an intention to retain possession of the bag. Indeed, there is no evidence suggesting Defendant had any intent to return and collect the bag.[6]

As in <u>Edwards</u>, Defendant simply left the bag unsecured and in a public location. <u>See</u> 441 F.2d at 150. Despite Defendant's argument that he "did not attempt to conceal the backpack in any way," if he had intended to keep the bag from prying eyes, he presumably *would have* attempted to put it somewhere private or at least to conceal its location. Unlike in <u>Ross</u>, where the room was presumptively private and locked, Defendant instead left his bag in public with no ostensible protections except an unsecured zipper. <u>See</u> 941 F.3d at 1068. By leaving the bag in such a precarious position and making no effort "to conceal the backpack in any way," Defendant abandoned the bag for anyone to pick it up and rifle through it, including law enforcement. <u>See</u> (Doc. 34, at 7). Defendant cites to no case where any court has held that a defendant has a reasonable expectation of privacy in an item he intentionally left unsecured in plain view in a public location. The Court concludes that Defendant

---

[6] The Government did not offer such evidence and argues Defendant abandoned the bag. <u>See</u> (Doc. 32, at 15). Defendant, presumably, did not offer such evidence because to do so would essentially be admitting he intended to possess a loaded gun, which is the crime he is charged with. <u>See</u> (Doc. 1).

16

abandoned the book bag and thus has no standing to challenge the subsequent search of the bag.  See Tinoco, 304 F.3d at 1117.[7]

**D.    Defendant's Statement to Officer Finks**

Last, Defendant moves to suppress his statement to Officer Finks claiming ownership of the bag of marijuana found in front of Little's seat.  (Doc. 29, at 18–19).  However, the issue of whether Defendant's statement was voluntary was not raised in his pre-hearing brief.  (Doc. 15).  During the hearing itself, the Court inquired about the purpose for the hearing and defense counsel did not indicate that Defendant's statement would be at issue.  (Doc. 28, at 8).  As such, the factual record developed at the hearing is sparse regarding the circumstances surrounding Defendant's statement to Officer Finks.  Because the issue was not raised in Defendant's pre-hearing brief or at the hearing itself, the Court concludes that Defendant's argument regarding his pre-Miranda statement is not properly before the Court.[8]

---

[7]  Because the Court concludes Defendant has no standing to challenge the search of the book bag, the Court need not reach the Government's other arguments regarding that evidence.  See (Doc. 32, at 17-22).

[8]  The Court notes that the issue of whether Defendant's statement should be suppressed is likely moot.  As the Government points out, "Defendant is not charged with the possession of the marijuana found in the SUV."  (Doc. 32, at 25).  If "the

## **CONCLUSION**

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**.  (Doc. 15).  There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.  **IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Certified Ready for Trial.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this  15  day of June, 2020.

_Linda T. Walker_
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

———————————————

statement will not be introduced in the Government's case-in-chief," Defendant's motion to suppress the statement is moot since a "statement made in violation of Miranda is not precluded from being used for impeachment purposes" under the circumstances of this case.  See United States v. Philpot, No. 1:15-CR-00028-WSD, 2017 WL 510893, at *5 (N.D. Ga. Feb. 8, 2017).

18